[Civ. No. 14467. Second Dist., Div. Three. Dec. 15, 1944.]

N. S. McNEILL et al., Appellants, v. ROBERT S. REDING-
TON, Respondent.

Joseph R. Vaughan for Appellants.

Michael F. Shannon and Thomas A. Wood for Respondent.

FOX, J. pro tem.—This action arises out of defendant's operation of a drop forging plant which transmitted damaging vibrations and noises to the nearby homes of plaintiffs. In the first cause of action, plaintiffs sought to enjoin the plant operation, alleging that it damaged their homes and unlawfully interfered with their use and enjoyment of the same. In succeeding separate causes of action, the various plaintiffs set forth the damage to the physical structures of their respective homes and the injury they have sustained in the comfortable enjoyment thereof, caused by the operations of defendant's plant, and seek compensation therefor. Judgment went for the defendant. The plaintiffs have appealed.

All the nineteen homes of plaintiffs were built prior to 1935. Some were built prior to 1927. They are situated within distances varying from 100 to 525 feet of defendant's plant. Eighteen of these homes are occupied by the owners. The nineteenth is occupied by plaintiffs Henriques, as tenants. Defendant's predecessor began operating this plant in 1940, using one 1,100-pound steam hammer. There is no evidence of the effect, if any, on these surrounding homes from the operation of the plant by such predecessor. Defendant commenced operating the plant in July, 1942. Defendant uses two 1,100-pound steam hammers, one 600-pound electric hammer, one 300-pound drop hammer, a steam boiler and certain other machinery incidental to plant operations. In the operation of said plant defendant heats metal in furnaces to a red hot state and then subjects such metal to hammers, thus forming it to the desired specifications. The plant is operated on a schedule of twenty-four hours a day.

The area in which these homes and defendant's plant are located is classified as Zone M-3 and was so zoned by Ordinance No. 1494, New Series, as Amended, of the County of Los Angeles, adopted in 1927.

The parties stipulated that: "considered apart from the effect of Section 731a of the *Code of Civil Procedure,* the present and past operations by defendant in said plant transmit

injurious vibrations to the residences of plaintiffs and create noise which seriously interferes with the use and enjoyment of their property as residences and constitutes a nuisance as that term is defined in *Civil Code*, Section 3479, of a character which clearly and substantially invades the rights of plaintiffs.'' It was also stipulated ''That actual physical damages have been caused by the operations of the plant to plaintiffs' residences; that actual damage has been suffered by plaintiffs in their use and enjoyment of their property.''

Plaintiffs produced evidence showing the character and extent of the damage that was done to their homes. This evidence showed that defendant's operations caused the ceiling and walls, both interior and exterior, to crack; excessive settling of foundations, porches, floors and chimneys, and loosening of cupboards, window frames, plumbing fixtures, mantels, tile copings and door casings. The estimated cost of repairs for the twelve homes inspected varied from $400 to $700 each. This evidence on the question of damage was not controverted by the defendant.

The trial court found that in the operation of said plant ''certain noises are caused which interfere with plaintiffs' comfort.'' Also, that said operations caused ''lateral vibrations in the earth, which vibrations can be felt by the plaintiffs in their homes, and that said lateral vibrations have injured the homes of said plaintiffs in that cracks have appeared in the plaster, and that windows in some of the houses have become loose and rattle upon occasion and during the time that the defendant herein is using the hammers.''

The defendant in support of the judgment relies solely on section 731a, Code of Civil Procedure. That section was added to the code in 1935. The portion of said section that is here material reads as follows: ''Whenever any city, city and county, or county shall have established zones or districts under authority of law wherein certain manufacturing or commercial uses are expressly permitted, no person or persons, firm or corporation shall be enjoined or restrained by the injunctive process from the reasonable and necessary operation in any such industrial or commercial zone of any use expressly permitted therein, nor shall such use be deemed a nuisance without evidence of the employment of unnecessary and injurious methods of operation.''

Three questions are presented on this appeal: (1) Is County Ordinance No. 1494, New Series, as amended, sufficiently specific to meet the requirements of section 731a,

Code of Civil Procedure, and thus make said section applicable here; (2) are plaintiffs entitled to injunctive relief; and (3) are they entitled to damages?

The said ordinance divides the unincorporated area of Los Angeles County into sixteen zones, one of which is Zone M-3. In subdivision (b) it is "declared that in the creation by this ordinance of the respective zones . . . the Board of Supervisors have given due and special consideration to the peculiar suitability of each and every zone herein created for the particular uses enumerated therefor, the area requirements, density of land occupancy, and the necessary, proper and comprehensive groupings and arrangement of the various industries, businesses and population of the unincorporated area of the County of Los Angeles and in relation with established plans in the incorporated areas of said county in accordance with a well-considered plan for the development of the entire County, paying particular attention to those areas in said unincorporated territory wherein more densely populated communities have arisen, giving to such communities urban characteristics." It is provided by an amendment to said subdivision that "Except as herein otherwise provided, any building, structure, improvement, or premises may be erected, constructed, established, altered, enlarged, used, occupied, or maintained in said Zone M-3 without any restriction under the provisions of this ordinance as to the use or occupancy thereof. . . ." Then follow certain exceptions with which we are not concerned. It is true that drop forging plants are not specifically mentioned as one of the industries authorized to operate in Zone M-3, but neither are other industries which may operate in said zone specifically mentioned. It is, however, unmistakably clear that the class of industry which includes drop forging plants is expressly permitted to operate in that zone. The trial court, therefore, correctly found that "the business operated by defendant in and upon said premises, is one expressly permitted by said ordinance." This finding sufficiently determines that the provisions of section 731a, Code of Civil Procedure, are applicable to this case.

In order to determine the effect of said code section on the situation here presented it must be pointed out that the trial court found that the operation, and manner of operation, of said plant by the defendant is reasonable and necessary and that the defendant does not employ unnecessary and injurious methods of operation but on the contrary "the methods of operation employed by said defendant are

reasonable and necessary." Under these findings and in view of the express provisions of said code section, the trial court properly denied plaintiffs injunctive relief.

■ Are the plaintiffs entitled to recover damages? We think they are. From the evidence, the stipulations of the parties and the court's findings, it is clear that actual physical damages have been caused to plaintiffs' homes by the operation of defendant's plant; and, also, that actual damage has been suffered by plaintiffs in their use and enjoyment of their homes. Apart from the provisions of section 731a, Code of Civil Procedure, the plaintiffs would be entitled to recover the damages thus sustained. (*Tuebner* v. *California St. R. R. Co.* (1884), 66 Cal. 171, 175 [4 P. 1162] ; *Judson* v. *Los Angeles Suburban Gas Co.* (1910), 157 Cal. 168, 172 [106 P. 581, 21 Ann.Cas. 1247, 26 L.R.A.N.S. 183] ; *Dauberman* v. *Grant* (1926), 198 Cal. 586, 590 [246 P. 319, 48 A.L.R. 1244] ; *Fendley* v. *City of Anaheim* (1930), 110 Cal.App. 731, 737 [294 P. 769].) The plaintiffs' right to recover damages in these cases and others of like character is tied in with the circumstance that the defendant's acts constituted a nuisance. Such a plaintiff was, prior to the adoption of section 731a, Code of Civil Procedure, entitled to both injunctive relief and damages under section 731, Code of Civil Procedure. ■ It is not necessary, however, for us to determine the effect of section 731a, Code of Civil Procedure, on a plaintiff's right to recover damages where his cause of action is on the theory of a nuisance because in their separate and individual causes of action the plaintiffs in the instant case have pleaded that the operations of defendant's plant constituted an invasion of their property in the nature of a trespass. The evidence and findings sustain the allegations. Section 731a, Code of Civil Procedure, then has no application because it does not purport, either expressly or by implication, to extend to trespassory invasions of another's property. Its provisions do not therefore, bar the right of plaintiffs to recover for the damages they have sustained.

The case is not, in principle, unlike *McKenna* v. *Pacific E. Ry. Co.* (1930), 104 Cal.App. 538 [286 P. 445], insofar as the operations of the defendant constituted an actionable invasion of plaintiffs' property. In that case the defendant railway company owned a certain strip of land in the city of Los Angeles, running in a generally northwesterly direction from its station near Fourth and Hill Streets to First Street and Glendale Boulevard, a distance of nearly one mile. Said com-

pany entered into a contract with Twohy Bros. Company for the construction of a tunnel or subway between these points for electric railway use. McKenna owned a lot with a house thereon at Fourth and Boylston Streets, about seventeen feet from the west line of this tunnel (projected to the surface). The construction company in boring the tunnel used dynamite, and from the explosions the plaintiff's property was damaged by the shaking of the ground and building or by concussion or both. In affirming plaintiff's right to recover for the damage thus sustained, the court said (p. 543): "We see no reason for differentiating between responsibility for damage done by physical projectiles or missiles and responsibility for damage done by vibration or concussion." See, to the same effect: *Colton* v. *Onderdonk* (1886), 69 Cal. 155 [10 P. 395, 58 Am.St.Rep. 556]; *McGrath* v. *Basich Bros. Const. Co.* (1935), 7 Cal.App.2d 573 [46 P.2d 981]; 35 C.J.S., section 8, page 239, and cases cited under note 13. These decisions are simply a practical application of the principle stated in section 3514, Civil Code, that "One must so use his own rights as not to infringe upon the rights of another."

The judgment is reversed with directions to retry only the issue of damages.

Desmond, P. J., and Shinn, J., concurred.

A petition for a rehearing was denied January 11, 1945, appellants' and respondent's petitions for a hearing by the Supreme Court were denied February 8, 1945. Carter, J., voted for a hearing.